**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

JOSH C.,

                Plaintiff,

    v.                                  5:19-CV-492

                                       (DJS)

ANDREW M. SAUL, *Commissioner of
Social Security*,

                Defendant.

_____

**APPEARANCES:**    **OF COUNSEL:**

CONBOY, McKAY, BACHMAN    PETER L. WALTON, ESQ.
& KENDALL, LLP
Attorney for Plaintiff
407 Sherman Street
Watertown, New York 13601

U.S. SOCIAL SECURITY ADMIN.    KEVIN M. PARRINGTON, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
Boston, MA 02203

**DANIEL J. STEWART
United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 4 & General Order 18.

purposes of disability insurance benefits. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 7 & 11. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion for Judgment on the Pleadings is denied. The Commissioner's decision denying Plaintiff disability benefits is reversed and the matter is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1982, making him 36 years old on the date of the ALJ's decision. Dkt. No. 6, Admin. Tr. ("Tr.") at p. 45. Plaintiff attended a two-year college and graduated with an associate degree in humanities and social science. *Id*. His prior employment included work as a movie theater attendant, office cleaner, and most recently, as a file clerk in a county land records office. Tr. at pp. 48-50, 209. Plaintiff alleges disability based upon migraine headaches, osteoporosis, depression, anxiety, and obsessive-compulsive disorder. Tr. at p. 166.

### B. Procedural History

Plaintiff applied for disability insurance benefits on March 11, 2016. Tr. at p. 70. He alleged a disability onset date of September 1, 2009. Tr. at p. 163. Plaintiff's application was initially denied on May 12, 2016, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 70-76 & 86-87. Plaintiff appeared at a hearing before ALJ Sherry L. Schallner on April 16, 2018, at

which he and a vocational expert ("VE") testified. Tr. at pp. 38-69. On June 21, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 7-24. On March 8, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

### C. The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff last met the insured status requirements on June 30, 2014, and had not engaged in substantial gainful activity from his alleged onset date of September 1, 2009 through his date last insured. Tr. at p. 12. Second, the ALJ found that Plaintiff had the following severe impairments: headaches, depression, anxiety, and obsessive-compulsive disorder. Tr. at p. 13. Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). *Id.* Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") through the date last insured to perform light work except:

> he must avoid concentrated exposure to bright lights and loud noise; [he can] frequently climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; he must avoid work at unprotected heights and unprotected mechanical parts; he can understand, remember, and carry out simple instructions and make simple work-related decisions; interact occasionally with supervisors and coworkers, but he can only have incidental interaction with the public; he can perform no tandem or team tasks; and he can perform no production-paced work with strict production quotas.

Tr. at p. 15. Fifth, the ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured. Tr. at p. 18. Sixth, the ALJ found that Plaintiff was in the "younger individual age" category, has at least a high school education, and is able to communicate in English. *Id.* Seventh, the ALJ found that there was work existing in significant numbers in the national economy that Plaintiff could have performed through the date last insured. Tr. at pp. 18-19. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at pp. 19-20.

### D. The Parties' Positions

Plaintiff makes three arguments in support of reversal. First, he argues that the ALJ failed to properly evaluate the medical opinion evidence, and in particular, failed to properly assign controlling weight to the opinions of two of Plaintiff's treating psychiatrists. Dkt. No. 7, Pl.'s Mem. of Law at pp. 6-11. Second, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's credibility and assess his subjective allegations regarding his functional limitations arising from pain and other symptoms. *Id.* at pp. 11-14. Finally, Plaintiff contends that these errors resulted in an erroneous RFC determination. *Id.* at p. 14-16.

Defendant counters that the ALJ properly evaluated the record evidence and that her determination is supported by substantial evidence. *See generally* Dkt. No. 11, Def.'s Mem. of Law. Specifically, he contends that the ALJ properly weighed the opinions in the record. *Id.* at pp. 4-16. Next, Defendant contends that substantial

evidence supports the ALJ's treatment of Plaintiff's subjective claims. *Id.* at pp. 17-18. Finally, Defendant submits that the RFC was supported by substantial evidence. *Id.* at pp. 18-19.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is

whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff contends that the ALJ improperly evaluated the medical opinion evidence and Plaintiff's subjective complaints regarding his functional limitations, resulting in an inaccurate RFC determination that overstated Plaintiff's physical and mental abilities. The Court agrees with Plaintiff with respect to the ALJ's evaluation of the medical opinions, but concludes that the ALJ's evaluation of Plaintiff's subjective complaints were proper and supported in the record. The matter is, therefore, remanded for further proceedings, specifically a more complete evaluation of the medical opinions, as explained in more detail below.

**A. Evaluation of Medical Opinion Evidence**

With respect to Plaintiff's RFC, the ALJ's decision discusses three opinions: treating psychiatrist opinions from Dr. Jeffrey Aronowitz and Dr. Lawrence Littell, and an opinion regarding Plaintiff's migraine headaches from Physician's Assistant ("PA") Lisa Trickey. Tr. at pp. 17-18. Plaintiff contends that the ALJ should have assigned greater weight to all of these opinions, and controlling weight to the opinions of the treating psychiatrists.[2]

*1. Opinions of Doctors Aronowitz and Littell*

Pursuant to the "treating physician rule" set out in 20 C.F.R. § 404.1527(c), "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

---

[2] For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). But since Plaintiff filed his claim on March 11, 2016, the treating physician rule applies. *See Claudio v. Berryhill*, 2018 WL 3455409 at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.").

8

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "'explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek v. Colvin*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527 is required. *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

Based upon the available record, Dr. Aronowitz had treated Plaintiff from September 2008 through July 2016. Tr. at pp. 223, 378. Plaintiff testified that he chose to end his treatment relationship with Dr. Aronowitz because he felt that he was no longer making progress. Tr. at pp. 63, 378. On June 28, 2016, Dr. Aronowitz completed a check-box form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." Tr. at pp. 374-376. He opined that Plaintiff had marked limitations in his ability to interact appropriately with the public, supervisors, or co-workers, and in

9

his ability to respond appropriately to usual work situations and to changes in a routine work setting. Tr. at p. 375. Dr. Aronowitz also opined that Plaintiff had moderate limitations in his ability to understand, remember, and carry out complex instructions, and his ability to make judgments on complex work-related decisions. Tr. at p. 374. He found no limitations in Plaintiff's ability to understand, remember, and carry out simple instructions, or his ability to make judgments on simple work-related decisions. *Id*. Dr. Aronowitz stated that his opinion reflected Plaintiff's condition since "Summer 2009." Tr. at p. 375. The form included minimal narrative description to support this opinion, but Dr. Aronowitz noted that Plaintiff showed "mild short term memory deficits," "significant anxiety and avoidance in public" and when working with others, and that Plaintiff "requires breaks during acute anxiety attacks." Tr. at pp. 374-375.

The ALJ assigned "some weight" to Dr. Aronowitz's opinion. Tr. at p. 17. In doing so, the ALJ noted that Dr. Aronowitz's opinion was issued after the date last insured, but that the psychiatrist's treatment relationship with Plaintiff had taken place prior to the date last insured. *Id.* The ALJ also compared Dr. Aronowitz's opinion to his treatment notes, and found that portions of the opinion were consistent with the contemporaneous description of Plaintiff's "drops of cognitive ability, short term memory deficits, anhedonia, and poor motivation," along with his documented social difficulties and depressed mood. Tr. at pp. 17, 231, 234.

Plaintiff began treatment with Dr. Littell and his staff in August 2016. Tr. at p. 398. Dr. Littell completed the check-box "Medical Source Statement of Ability to Do

Work-Related Activities (Mental)" on March 8, 2017.  Tr. at pp. 431-433.  He opined that Plaintiff had marked limitations in his ability to understand and carry out complex instructions, and in his ability to make judgments on complex work-related decisions.  Tr. at p. 431.  He further opined that Plaintiff had marked limitations in his ability to interact with the public, supervisors, or co-workers, and in his ability to respond appropriately to usual work situations and to changes in a routine work setting.  Tr. at p. 432.  In Dr. Littell's opinion, Plaintiff also had mild limitations in his ability to understand, remember, and carry out simple instructions, and moderate limitations in his ability to make judgments on simple work-related decisions.  Tr. at p. 431.  All limitations described by Dr. Littell dated back to at least August 1, 2016.  Tr. at p. 432.  According to the limited narrative, Dr. Littell based his opinion on psychotherapy sessions and medication management sessions with Plaintiff.  *Id*.  The ALJ assigned "little weight" to Dr. Littell's opinion and pointed out that his treatment relationship with Plaintiff did not begin until after the date last insured. Tr. at pp. 17, 398.

After careful review, this court concludes that the ALJ articulated a number of valid reasons for affording less weight to the opinions of Plaintiff's treating doctors, but that her overall consideration of those opinions failed to satisfy the requirements of the treating physician rule.

In *Estrella v. Berryhill*, the Second Circuit recently addressed an ALJ's failure to "explicitly" apply the regulatory factors discussed in *Greek* when assigning weight to a treating physician's opinion.  925 F.3d 90 (2d Cir. 2019).  In *Estrella*, the Court

11

explained that such a failure is a procedural error and remand is appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]'" 925 F.3d at 96 (alteration in original) (quoting *Halloran v. Barnhart*, 362 F.3d at 32). The Court further clarified that "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm." *Estrella v. Berryhill*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d at 32). The Court also noted the question of "whether 'a searching review of the record . . . assure[s us] . . . that the substance of the . . . rule was not traversed'" is "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating psychiatrist's] opinion." *Id*.

The Second Circuit recently reiterated its *Estrella* findings in *Ferraro v. Saul*, indicating that the ALJ did not explicitly consider the frequency, length, nature, and extent of treatment that the claimant had with his treating physicians, did not otherwise provide "good reasons" for assigning reduced weight to the opinions of those physicians, and a searching review of the record did not assure the Court that the substance of the treating physician rule was not traversed. 2020 WL 1189399, at *2-3 (2d Cir. Mar. 12, 2020). The Court in *Ferraro* also indicated that "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.'" *Id*. at *2.

In this case, the ALJ focused on several relevant factors. For example, the check-box form utilized in each of the opinions limited their usefulness. "[C]ourts have

routinely recognized the failure to provide a requested narrative explanation on a check box form as a legitimate reason for affording a treating source opinion limited weight." *See*, *e.g.*, *Z.J.F. by Conkling v. Comm'r of Soc. Sec.*, 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (citing *Camille v. Colvin,* 652 Fed. Appx. 25, 27 (2d Cir. 2016)); *Jones v. Comm'r of Soc. Sec.,* 2016 WL 11477508, at *10 (N.D.N.Y. Aug. 8, 2016), *report and recommendation adopted sub nom.*, *Jones v. Colvin,* 2016 WL 4991605 (N.D.N.Y. Sept. 19, 2016). The timing of the opinion is also a valid issue raised by the ALJ, particularly in the case of Dr. Littell, who did not treat Plaintiff prior to the date last insured. *See Murphy v. Comm'r of Soc. Sec.*, 2017 WL 8895352, at *9 (N.D.N.Y. Oct. 24, 2017) (finding that ALJ "properly noted the timing" of physician's opinions where the opinions "did not contain any notation indicating that the limitations contained therein were retrospective" to the period at issue). Dr. Littell expressly limited his opinion to the period after August 1, 2016, or just over two years after the date last insured.

Consideration of and reliance on these factors, however, cannot excuse the ALJ's failure to fully address the express treating physician factors outlined above. The opinions of the two doctors are addressed in a single paragraph. That analysis does not provide a meaningful and detailed discussion of "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; [or] (3) the consistency of the opinion with the remaining medical evidence." *Greek v. Colvin*, 802 F.3d at 375. The failure to specifically discuss these relevant factors means the

Court is unable to conclude that the treating physician rule was complied with in this case. *See Estrella v. Berryhill*, 925 F.3d at 96. The ALJ's explanation of the weight afforded to these opinions fails to give the Court a clear picture of her analysis. Tr. at p. 17. The Court is left unable to conduct a meaningful review regarding the ALJ's consideration of these opinions and how it factored into the RFC determination. *See Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [her] conclusion to enable a meaningful review.'") (citation omitted).

## 2. Opinion of PA Trickey

As set out in the record, Physician's Assistant Lisa Trickey had treated Plaintiff's migraines since February 2011. Tr. at p. 241. On November 17, 2016, she provided a short opinion on a check-box form regarding the limitations imposed by Plaintiff's migraine headaches. Tr. at p. 394. PA Trickey opined that Plaintiff suffered from incapacitating migraine headaches at least once per week, and that this medical condition would cause him to be absent from work about one day per week. *Id*. The report did not include any narrative to support this opinion.

The ALJ provided several reasons for assigning "little weight" to PA Trickey's opinion. Tr. at p. 17. First, the ALJ discounted the opinion because PA Trickey was not an acceptable medical source as defined in 20 C.F.R. § 404.1527. *Id*. As Plaintiff points out, however, that opinion was co-signed by Dr. Abdul Latif, a fact the ALJ does not discuss in weighing the opinion. Tr. at p. 394; Pl.'s Mem. of Law at p. 9. When a

treating doctor signs an opinion prepared by a practitioner who is not an acceptable medical source, "the report should be evaluated under the treating physician rule unless evidence indicates that the report does not reflect the doctor's views." *Djuzo v. Comm'r of Soc. Sec.*, 2014 WL 5823104, at *4 (N.D.N.Y. Nov. 7, 2014) (collecting cases); *see also Viverito v. Colvin*, 2016 WL 755633, at *13-14 (E.D.N.Y. Feb. 25, 2016) (collecting cases). There is no indication that the report does not reflect Dr. Latif's views. As such, the opinion should have been evaluated pursuant to the treating physician rule.

For these reasons, the Court remands the matter for further evaluation of these medical opinions.

### B. Consideration of Plaintiff's Subjective Complaints

The ALJ concluded that Plaintiff's subjective statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at p. 16. Plaintiff argues that the ALJ made numerous errors in her consideration of the medical record and Plaintiff's activities of daily living that resulted in an erroneous credibility determination that requires remand. Pl.'s Mem. of Law at pp. 14-17.

Although the Commissioner recently eliminated the use of the word "credibility" from departmental policy statements, the ALJ remains obligated to "carefully consider all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including daily activities and the location, duration, frequency, and

intensity of their pain or other symptoms." *Debra T. v. Comm'r of Soc. Sec.*, 2019 WL 1208788, at *9 (N.D.N.Y. Mar. 14, 2019) (quoting *Del Carmen Fernandez v. Berryhill*, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (internal quotations and alterations omitted)). The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [his] ability to work.'" *Barry v. Colvin*, 606 Fed. Appx. 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a) (alterations in original). If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors

concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ was clearly aware of her obligations to evaluate Plaintiff's subjective complaints, and the Court finds no error that would require remand. The record indicates that the ALJ undertook a careful consideration of relevant factors. She reviewed Plaintiff's medical records and noted numerous instances where Plaintiff reported that his migraine headaches were manageable with over the counter medication, and numerous appointments during which Plaintiff appeared cooperative, with intact memory and concentration, and appropriate behavior and communication skills. Tr. at pp. 16-17. The ALJ also considered numerous appointments during which Plaintiff described himself as "doing well" without any functional limitations from his diagnosed depression, anxiety, and obsessive-compulsive disorder. *Id*.

The ALJ also identified Plaintiff's daily activities and discussed the extent to which they did, and often did not, correlate with his subjectively reported limitations. For example, the ALJ noted that Plaintiff received unemployment compensation in 2010, which was inconsistent with this claim that he was unable to work during this time. Tr. at p. 17; s*ee also Debra M. v. Berryhill*, 2019 WL 1396963, at *7 (N.D.N.Y. Mar. 28, 2019) (collecting cases that considered social security claimant's receipt of unemployment benefits as a valid inquiry). The ALJ also discussed Plaintiff's interviews for other work after the alleged onset date, and his pursuit of educational and career opportunities as varied as broadcasting, voiceover work, electronic

17

manufacturing, and website development. Tr. at pp. 17, 231-32, 234, 367. The ALJ also considered Plaintiff's testimony that he occasionally drove, regularly researched history on the internet, and played computer games. Tr. at pp. 15, 46, 51-52.

In her discussion of Plaintiff's activities, the ALJ also mentioned his participation in a band and his work at the County Clerk's office and a janitorial service. Tr. at p. 17. As Plaintiff correctly notes, there is no record evidence that these activities occurred after the alleged onset date of September 1, 2009. Tr. at pp. 47, 52. The Court finds this error to be harmless, however, in light of the other substantial evidence that the ALJ considered in assessing Plaintiff's symptoms, as described above. *See Rockwood v. Astrue*, 614 F. Supp.2d 252, 272 (N.D.N.Y. 2009) (ALJ's incorrect rendition of facts was harmless error when credibility assessment was amply supported by other substantial evidence).

Overall, the ALJ identified substantial evidence to conclude that Plaintiff's subjective complaints were not consistent with the record evidence, including Plaintiff's hearing testimony and his reports to medical providers. Doing so was not only consistent with, but required by, SSR 16-3p which states that the Social Security Administration "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." Soc. Sec. Ruling 16-3p, 2016 WL 1119029, at *8. It was thus "well within the ALJ's discretion to compare contradictory statements of daily activities." *Hayes v. Berryhill*, 2017 WL 4326118, at *10 (S.D.N.Y. Sept. 28, 2017).

While Plaintiff points to other evidence in the record that depicts Plaintiff's feelings of being overwhelmed in social settings, his desire to be increasingly reclusive, and examples of compulsive behavior, it was ultimately for the ALJ, not the Court, to resolve such evidentiary conflicts. *Schlichting v. Astrue,* 11 F. Supp. 3d 190, 206 (N.D.N.Y. 2012) (quoting *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 642 (2d Cir. 1983)). Indeed, the ALJ expressly considered such record evidence as part of her decision, and concluded that Plaintiff's RFC is limited to simple decision-making and only occasional social interaction. Tr. at pp. 15-17.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED,** that the decision of the Commissioner denying Plaintiff disability benefits is **REVERSED** and the matter is **REMANDED** for further proceedings pursuant to sentence four of section 405(g) as set forth above; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: September 14, 2020
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge